IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GILDA L. GUZMAN,<br><br>　Plaintiff,<br><br>v.<br><br>BURNS & WILCOX, LTD.,<br><br>　Defendant. | Civil Action No.:<br><br>_____ |

## COMPLAINT

Plaintiff Gilda L. Guzman ("Guzman") files this Complaint against Defendant Burns & Wilcox, LTD. ("Burns & Wilcox"), respectfully showing as follows:

### NATURE OF THE ACTION

1. This is an action for unpaid overtime wages brought under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA").

2. Burns & Wilcox willfully violated the FLSA by failing to pay Guzman for all hours worked over 40 hours per workweek at 1.5 times her regular hourly rate of pay by only paying Guzman for 40 hours per workweek regardless of the number of hours worked by Guzman.

### PARTIES

3. Guzman is an individual resident of Fulton County, Georgia.

4. Burns & Wilcox is a Michigan corporation registered and licensed to do business in the State of Georgia.

5. Burns & Wilcox may be served through its registered agent: Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, GA, 30092.

## JURISDICTION AND VENUE

6. Under 28 U.S.C. § 1331 this Court has jurisdiction over Guzman's claims because the claims raise questions of federal law.

7. Under 28 U.S.C. § 1391(b) and Local Rule 3.1(B), venue is proper in this division because at least one defendant resides in this division or a substantial part of the events or omissions giving rise to the claims occurred in this division.

8. Burns & Wilcox has consented to the jurisdiction of this Court because it is registered to do business in Georgia.

## BURNS & WILCOX IS COVERED BY THE FLSA AND EMPLOYED GUZMAN

9. Burns & Wilcox is an insurance wholesaler.

10. Burns & Wilcox is an enterprise engaged in commerce or the production of goods for commerce.

11. During the time that Guzman was employed, Burns & Wilcox had two or more "employees handling, selling, or otherwise working on goods or

materials that have been moved in or produced for commerce by any person," as defined in 29 U.S.C. § 203(s)(1)(A).

12. Burns & Wilcox employs two or more individuals who regularly communicate across state lines using the interstate mail, internet, and telephone while performing their job duties.

13. Burns & Wilcox's employees handle and use materials that were manufactured outside the state of Georgia and traveled through interstate commerce, such as computers, computer software, paper supplies, printers, and copiers, while performing their job duties.

14. For the three years preceding the filing of this Complaint, Burns & Wilcox's annual dollar volume of sales of business transactions exceeded $500,000.00 per year.

15. At all relevant times, Burns & Wilcox employed Guzman within the meaning of the FLSA.

16. Burns & Wilcox hired Guzman on or about January 13, 2017.

17. Burns & Wilcox determined the employment practices applicable to Guzman.

18. Burns & Wilcox had the authority to change the employment practices applicable to Guzman.

19. Burns & Wilcox determined how Guzman was paid.

20. Burns & Wilcox set Guzman's schedule.

21. Burns & Wilcox maintained Guzman's employment records, such as time and payroll records.

22. Guzman's employment with Burns & Wilcox ended on or about November 27, 2023.

23. During the time that Guzman was employed, Burns & Wilcox was Guzman's employer for the purposes of the FLSA.

24. At all times relevant to this suit, Guzman was not exempt from the maximum weekly hour requirements of the FLSA.

## FACTS

25. Guzman began working for Burns & Wilcox as an Assistant Underwriter.

26. Initially, Burns & Wilcox paid Guzman approximately $40,000 per year.

27. By the end of her employment, Guzman earned approximately $50,000 annually.

28. Guzman's salary was intended to compensate her for a full-time work schedule of 40 hours per week.

29. However, Guzman routinely worked more than 40 hours per week almost every week while employed by Burns & Wilcox.

30. When Guzman was first employed, she worked on a team that only processed renewals.

31. Guzman helped prepare the renewal spreadsheet of all Producer Underwriters at least a week prior to 60 days of expiration.

32. The renewal process started at least 60 days before the expiration of the policy, plus an additional three-day allowance for mailing.

33. Guzman, along with her manager, had to work long hours, often to make up for other team members who were behind on their work, to complete all the renewals in a timely fashion.

34. Processing the renewals required Guzman to follow policies established by Burns & Wilcox and the requirements provided by the insurance carriers.

35. For example, Guzman was required to review every account due for renewal to determine if the account qualified for renewal based on the current carrier's underwriting guidelines.

36. If the policy qualified for renewal, Guzman would prepare a quote by entering data into an insurance software platform, such as Concept One or the carrier's portal, and send the information to the agent for presentation to the insured.

37. If the insured approved the quote and paid the premium, the agent would send a bind request to Guzman, who would create a bind task and assign to the service team for binding and creation of policy or bind the quote herself on the carrier's portal, depending on the requirements of the carrier.

38. The Binder, Policy and Invoice would then be sent to the agent for the insured.

39. If the account did not qualify for renewal, or the insured did not approve the quote, Guzman would remarket the account to a different carrier and begin the quote process again.

40. In January 2023, Guzman's workload increased significantly.

41. Rather than working on a renewal team, Guzman was assigned to work on the renewal of policies for a particular commercial producer.

42. Under her previous team, Guzman worked with five carriers.

43. Under her new team, she worked with fourteen contracted carriers and at least 20 brokerage underwriters.

44. Guzman's responsibilities required her to work 60 to 70 hours per week to stay on top of her workload.

45. When Guzman informed her employer that her workload was too much, her employer responded with time management tactics.

46. Her employer also informed her it was acceptable to leave emails unanswered.

47. However, unanswered emails would increase the number of emails she would have to respond to the next day and create an unmanageable backlog.

48. If Guzman did not stay on top of her responsibilities, she would be criticized for not completing her work on time.

49. In an effort to communicate the extent of her workload to Burns & Wilcox, Guzman created a spreadsheet to detail her activities for three months.

50. Burns & Wilcox did not reduce her responsibilities.

51. Burns & Wilcox knew that Guzman could not complete her duties within a 40-hour work week.

52. Burns & Wilcox knew that Guzman was working more than 40 hours per work week.

53. Burns & Wilcox did not require Guzman to record her hours worked.

54. Burns & Wilcox failed to record all of Guzman's hours worked.

55. Burns & Wilcox failed to pay Guzman for all hours worked over 40 per week at a rate of 1.5 times her regular rate.

56. Guzman is entitled to pay at the overtime rate for all hours worked over 40 per week as Burns & Wilcox's employee within the last three years.

## COUNT 1: WILLFUL FAILURE TO PAY OVERTIME WAGES

57. Guzman regularly worked over 40 hours per week.

58. Burns & Wilcox was aware of Guzman's overtime work.

59. Burns & Wilcox suffered or permitted Guzman's overtime work.

60. For every hour worked over 40 per week, Guzman was entitled to 1.5 times her regular rate.

61. Burns & Wilcox willfully failed to pay Guzman at 1.5 times her regular rate of pay for hours worked over 40 per week.

62. Burns & Wilcox is liable for the failure to pay Guzman's overtime under the FLSA.

63. The failure to pay overtime wages in violation of the FLSA damaged Guzman in an amount to be proven at trial.

64. Guzman is entitled to back-owed wages, liquidated damages, and attorneys' fees and expenses in accordance with 29 U.S.C. § 216(b).

## DEMAND FOR JUDGMENT

Guzman respectfully requests that the Court:

(1) Enter judgment in her favor that Burns & Wilcox violated Guzman's rights under the FLSA;

(2) Enter judgment in her favor that Burns & Wilcox's violations of Guzman's rights under the FLSA were willful;

(3)     Award Guzman all unpaid overtime wages for a period of three years;

(4)     Award Guzman liquidated damages in an amount equal to her unpaid wages;

(5)     Award Guzman their reasonable attorney's fees, costs, and expenses; and

(6)     Award all other relief to which Guzman may be entitled.

## DEMAND FOR TRIAL BY JURY

Guzman requests a trial by jury under Fed. R. Civ. P. 38.

Respectfully submitted, Monday, March 25, 2024.

*s/ John L. Mays*
**John L. Mays**
Georgia Bar No. 986574
jmays@pcwlawfirm.com
**Melissa D. Andrews**
Georgia Bar No. 385004
mandrews@pcwlawfirm.com

**PARKS, CHESIN & WALBERT, P.C.**
1335 Peachtree NE, Suite 2000
Atlanta, GA 30309
Telephone: 404-873-8000
Fax: 404-873-8050

*Counsel for Plaintiff*